Matías Graniela, Plaintiff and Appellee, v. Yolande, Inc.,
et al., Defendants and Appellants. Primitivo Acosta
Graniela et ux., Plaintiff and Appellees, v. Same, De-
fendants and Appellants. Ana Rosa Acosta Ramírez,
Plaintiff and Appellee, v. Same, Defendants and Appel-
lants.

No. 8999. Argued January 19, 1945.—Decided May 31, 1945.

J. *Alemañy Sosa* for appellants. *A. Ramírez Silva* and *Fernando Zapater* for appellees.

Mr. Justice De Jesús delivered the opinion of the court.

This appeal involves three actions for damages which flowing from the same accident were submitted to the lower court on the same evidence and consolidated in this court.

Yolande, Inc., a corporation engaged in the needlework industry, on or about July 1, 1940, was the owner of a Mercury automobile which was used by the manager of the corporation to go to different points in the Island in business matters, and was also used for other business purposes when the manager so ordered. On said day, at about 8:00 P. M., while the automobile in question was being driven by defendant's chauffeur, Enrique Ramos Candelario, on the road leading from San Germán to Mayagüez, at about six or seven kilometers from Mayagüez, due to reckless driving, one of the fenders of the car collided with the railing of the Río Hondo Bridge, and the car struck against a tower which supported electric wires and from there was thrown against five young ladies who walked along the road in the same direction as the automobile, causing the death of four of them and seriously injuring the fifth. The lower court rendered judgment in favor of the plaintiffs: in one of the cases, for Matías Graniela, father of two of the dead girls; in another, for Primitivo Acosta Graniela and his wife, parents of two of the other girls who died, and in the third case, for Ana Rosa Acosta Ramírez, who sued in her own name for the injuries she sustained.

The defendants herein, Yolande, Inc., and the insurer of the car, expressly admitted in their brief that the former

was the owner of the automobile; that the chauffeur who was driving at the time of the accident was its employee, and that the proximate cause of the accident was the chauffeur's negligence. However, they denied that while the chauffeur drove the car that night, he was acting in the business of the corporation. On the contrary, they alleged that he had acted in disobedience of the orders of the manager, who at about six o'clock that afternoon had ordered him to place the car in the garage and that in disobedience to her orders the chauffeur had taken some friends to Cabo Rojo for a ride and that the accident had happened on their return. These admissions of the defendant leave one sole question in controversy and that is whether at the time of the accident the chauffeur was acting within the scope of his employment.

Plaintiffs' evidence, added to the manner in which the accident occurred, tends to show that after the accident took place the chauffeur ran away; that one of the plaintiffs and other witnesses, who reached the place of the accident immediately after it happened, saw in the back part of the car several sizeable packages. This detail is corroborated by the testimony of one of plaintiffs' witnesses who stated that while he was in the outskirts of Cabo Rojo, fixing a tire of a truck, defendant's chauffeur arrived and parked the car there; that the witness asked him for a pump and that the chauffeur answered that he had one but that he could not lend it to him because he had to leave right away for Mayagüez to deliver some packages for his employer; that at that same time he saw a girl crossing the street with various packages which she handed to the chauffeur, who placed them in his car and continued his trip to Mayagüez. Lastly, policeman Arbona testified for the plaintiffs and stated that when he arrived at the chauffeur's house to arrest him, at about two o'clock in the morning of July 2, the chauffeur was seated on the sofa with the door open and the lights on; that when the policeman entered the house, the chauf-

feur told him that he knew that he had come to arrest him, and asked to be protected to avert his being attacked by the relatives of the victims in the accident and stated that the manager was to blame for the accident for having sent him to Cabo Rojo to get some needlework immediately after he had arrived from a trip from San Juan. The defendants objected to the part of the policeman's testimony regarding the alleged statements of the chauffeur, but they were admitted as part of the *res gestae*.

In support of their appeal the defendants allege that the judgment should be reversed mainly because there is no proof whatsoever that when the accident occurred the chauffeur was acting within the scope of his employment. They rest their contention on the fact that the part of policeman's testimony objected to was inadmissible, and that if it were disregarded the only evidence left on that matter was that part of plaintiffs' evidence regarding the packages that the chauffeur was bringing from Cabo Rojo at the time of the accident. As regards this matter, evidence was introduced to the effect that persons who went to the place of the accident shortly thereafter did not see the packages in the car. Besides, they presented the testimony of the person in charge of the Cabo Rojo branch who testified that the work done there was carried to the principal office at Mayagüez in a delivery car which the corporation had for that purpose which was driven by another chauffeur, and when not carried in said car, they were taken by the witness personally; but that neither at the time of the accident, nor at any other time, the chauffeur Ramos Candelario had ever carried any work for the defendant.

If we consider that six hours had elapsed from the time of the accident until the chauffeur was arrested, and especially, if we take into account the chauffeur's fear of being attacked by the victims' relatives, it is evident that the statements of the chauffeur to the policeman blaming the corporation's manager, were not spontaneous statements, but for

his own defense, in an attempt to exculpate himself on the ground that he had had to exert too great an effort in order to make a second trip to get work from Cabo Rojo immediately after having arrived from San Juan. Since these statements were not spontaneous, and inasmuch as spontaneity is an indispensable element in order to admit statements of this sort as part of the *res gestae*, we must conclude that the lower court erred in admitting said statements, over defendants' objection. *Montaner* v. *Industrial Commission*, 54 P.R.R. 757 (1939); *Torres* v. *Dominguez*, 35 P.R.R. 245 (1926); 6 Wigmore on Evidence (3d ed.) § 1750, p. 142.

But disregarding the evidence of the statements wrongly admitted as part of the *res gestae*, from defendants' admission that the automobile was owned by Yolande, Inc., the presumption arises that at the time of the accident the chauffeur—who it has been admitted was employed by defendant—was acting within the scope of his employment. *Aponte* v. *Palacios*, 55 P.R.R. 674 (1939); *Morales* v. *Otero*, 53 P.R.R. 542 (1938); *Lotti* v. *The Charles McCormick Lumber Co.*, 51 P.R.R. 323 (1937); *Sánchez* v. *Asiatic Petroleum Co.*, 40 P.R.R. 98 (1929); *Guzmán* v. *Ortiz*, 39 P.R.R. 170 (1929); Annotations, 42 A.L.R. 898.

This presumption, of course, may be controverted by defendant's evidence. As we have seen, the defendants presented evidence to that end. If that evidence had not been contradicted by the plaintiffs—unless by its nature or because the same was physically impossible it could not have been believed—the judgment should be reversed. 42 A.L.R. 898, 908. But in the instant case the evidence presented by the defendants was contradicted by that of the plaintiffs in regard to the packages alleged to have been received by the chauffeur to be carried to Mayagüez, which the court believed. Since the court saw and heard the witnesses testify, for which reason it was in a better position than we are to weigh their credibility, and since the statements of plaintiffs'

witnesses are not physically impossible, we should not disturb the judgment of the lower court, thus allowing the presumption in favor of the plaintiffs to stand.

██ There only remains to be considered the amount of the damages and whether the amount awarded for attorney's fees is reasonable. In the action brought by Matías Graniela, $4,500 was granted for the mental suffering sustained by the father for the loss of each one of his daughters, that is, a total of $9,000. And that same amount was awarded in the action brought by Primitivo Acosta Graniela for the loss of his two daughters. As to Ana Rosa Acosta Ramírez, the court allowed $500. The amount of $900 was awarded for attorney's fees in each of the first two suits, and $150 in the third one—a total of $1,950. Defendants contend that the amount granted for damages is excessive. There is no reason why we should disturb the discretion of the lower court. The awards for damages are not excessive, especially if it is remembered that the present tendency of this court is to grant higher awards than formerly. *Mercado* v. *American Railroad Co.*, 61 P.R.R. 222 (1943); *Castro* v. *González*, 58 P.R.R. 369 (1941). With respect to the award granted to Ana Rosa Acosta Ramírez, far from being excessive, it is, in our opinion, rather insufficient, taking into consideration the seriousness of the injuries sustained by her; but since she did not appeal we can not disturb the judgment.

██ As to the attorney's fees, the award is undoubtedly excessive. Taking into consideration that the three suits involved exactly the same question, that they were heard on the same evidence, and that they only required but one effort on the part of the attorneys, the award of $1,950 should be reduced to $1,150, thus: $500 for each one of the first two suits, and $150 for the third one.

As thus modified, the judgment appealed from should be affirmed.